IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

**LESLIE M. LEWIS,**

        **Plaintiff,**

**v.**                                               **Civil Action No. 5:08cv167**
                                                               **(Judge Stamp)**

**DR. DAVID PROCTOR,**
**CORRECTIONAL SERVICES, INC.**
**AND WEXFORD HEALTH SOURCE,**

        **Defendants.**

**OPINION/REPORT AND RECOMMENDATION**

The *pro se* plaintiff initiated this case on November 13, 2008, by filing a civil rights complaint against the above-named defendants. On December 1, 2008, the plaintiff was granted permission to proceed as a pauper and assessed an initial partial filing fee. The plaintiff paid his initial partial fee on December 23, 2008. The plaintiff also filed a Motion to Amend Complaint for Additional Parties on February 4, 2009. This case is before the undersigned for an initial review and report and recommendation pursuant to 28 U.S.C.§§ 1915(e) and 1915A and LR PL P 83.01, et seq.

## I. The Pleadings

### A. The Complaint

In the complaint, the plaintiff asserts that on November 18, 2007, he was taken to medical because he passed blood. The plaintiff asserts that he sat in the medical department for two or three hours without being seen. Eventually, a nurse told the plaintiff to return to his dorm because there was no indication that anything was wrong with him. When the plaintiff attempted to stand up, he passed out and blood starting coming out of his rectum. Because there was no doctor present at the

time, the nurse told the plaintiff that she would need to call the doctor to get permission to send the plaintiff to the hospital. The nurse left to call the doctor. When she came back, the nurse told the plaintiff that the doctor said to place him in an observation room. However, a correction officer and another nurse, seeing the seriousness of the situation, called the medical administrator. The medical administrator overruled the doctor's instruction and sent the plaintiff to an outside hospital.

In March of 2008, the plaintiff went to the medical unit complaining of stomach cramps and requested something for his stomach from the doctor. The next day, the plaintiff went to the pill line and asked if anything had been prescribed to him. It had not. The plaintiff went back to medical several times with the same complaint. The doctor ordered a stool sample, but the plaintiff could not give one because he was suffering from constipation. The plaintiff was later called to medical and told he would have to sign a refusal form because he could not give a sample, or else he would be charged for the test. The plaintiff signed the refusal form. Moreover, because the plaintiff signed the refusal form, he was told that the doctor would have to sign another order for a stool sample. Therefore, the plaintiff was sent back to his dorm.

Over the next few months, the plaintiff returned to medical with complaints of upper G.I. cramps, but he received no response from the doctor.

On May 12, 2008, the plaintiff advised his counselor that he was experiencing severe stomach cramps and that he was not getting a response from the doctor. The plaintiff was advised to file a grievance. The plaintiff filed a grievance in which he requested follow-up care with a surgeon. The grievance was denied.

On June 7, 2008, the plaintiff again went to the medical unit and complained of severe cramps in his upper G.I.. The nurse sent the plaintiff back to his dorm and told the plaintiff he

would be called back to medical later. The plaintiff asserts that he was never called back.

On June 12, 2008, the plaintiff went back to medical with complaints of black stool and increasingly severe cramps. The plaintiff did not receive a response from the doctor.

On June 13, 2008, the plaintiff again went to medical with complaints of blood in his stool, shortness of breath and stomach cramps. The plaintiff was advised by a nurse to give a stool sample, which he did. The plaintiff was then advised to return to his dorm because the doctor was not in yet. After the plaintiff had been in his cell for about an hour, he passed out. Another inmate alerted a correction officer who escorted the plaintiff to medical in a wheelchair. The plaintiff was screened by a nurse. The nurse stated that the plaintiff looked pale and that his blood pressure was very low. Although the nurse went to speak to the doctor, she returned and told the plaintiff that the doctor did not respond and there was nothing further she could do. The plaintiff was sent back to his dorm and was escorted by the medical janitor. The plaintiff went to his counselor complaining that he was being refused medical treatment. The plaintiff was told to go lay down. The plaintiff did so and fifteen minutes later he was vomiting and passing blood through his rectum. Another inmate alerted a correction officer, who then called medical. The medical administrator witnessed the plaintiff's distress and escorted him to the medical unit. The plaintiff's condition was then recognized as a medical emergency and he was sent to a hospital.

**B.     The Plaintiff's Motion to Amend Complaint for Additional Parties**

In his motion to amend, the plaintiff requests permission to amend his complaint to add additional parties. Specifically, the plaintiff seeks to add Teresa Waid, Warden of the Huttonsville Correctional Center, as an additional defendant in this case. In support of his request, the plaintiff asserts that he filed administrative grievances with Warden Waid concerning the alleged denial of

3

medical care. However, the plaintiff's grievances were denied. The plaintiff does not assert that Warden Waid was in involved in his medical care in any other way.

## II. Standard of Review

Because the plaintiff is a prisoner seeking redress from a governmental entity or employee, the Court must review the amended complaint to determine whether it is frivolous or malicious. Pursuant to 28 U.S.C. § 1915A(b), the Court is required to perform a judicial review of certain suits brought by prisoners and must dismiss a case at any time if the Court determines that the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief against a defendant who is immune from such relief.

A complaint is frivolous if it is without arguable merit either in law or in fact. Neitzke v. Williams, 490 U.S. 319, 325 (1989). However, the Court must read *pro se* allegations in a liberal fashion. Haines v. Kerner, 404 U.S. 519, 520 (1972). A complaint which fails to state a claim under Fed.R.Civ.P. 12(b)(6) is not automatically frivolous. See Neitzke at 328. Frivolity dismissals should only be ordered when the legal theories are "indisputably meritless,"[1] or when the claims rely on factual allegations which are "clearly baseless." Denton v. Hernandez, 504 U.S. 25, 32 (1992). This includes claims in which the plaintiff has little or no chance of success. See Estelle v. Gamble, 429 U.S. 97, 106 (1976).

## III. Analysis

### A. Defendants Correctional Medical Services and Wexford Health Sources

Title 42 U.S.C. § 1983 provides that:

> Every person who, under color of any statute, ordinance, regulation,

---

[1] Id. at 327.

> custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable. For the purposes of this section, any Act of Congress applicable exclusively to the District of Columbia shall be considered to be a statute of the District of Columbia.

Thus, in order to state a successful claim under § 1983, the plaintiff must demonstrate that a person acting under color of state law deprived him of a right guaranteed by the Constitution or federal laws. Rendall-Baker v. Kohn, 457 U.S. 830, 838 (1982).

Here, the plaintiff cannot establish that Correctional Medical Services and Wexford Health Sources are "persons" for purposes of § 1983. Brooks v. Pembroke City Jail, 722 F.Supp. 1294, 1301 (E.D.N.C.1989) ("Claims under § 1983 are directed at 'persons' and the jail is not a person amenable to suit."); see also Will v. Michigan Dept. Of State Police, 491 U.S. 58, 71 (1989) ("Neither a State nor its officials acting in their official capacities are 'persons' under § 1983"); Preval v. Reno, 203 F.3d 821 (4th Cir. 2000)(unpublished) ("[T]he Piedmont Regional Jail is not a 'person,' and therefore not amenable to suit under §42 U.S.C. 1983"); Roach v. Burch, 825 F. Supp. 116 (N.D.W.Va. 1993) (The West Virginia Regional Jail Authority is "in effect the State of West Virginia" and is not a person under § 1983). Accordingly, the plaintiff fails to state a claim under § 1983 against Correctional Medical Services and Wexford Health Sources and those defendants should be dismissed from this action.

### B. Dr. Proctor

To state a claim under the Eighth Amendment for ineffective medical assistance, the plaintiff must show that the defendant acted with deliberate indifference to his serious medical needs. Estelle v. Gamble, 429 U.S. 97, 104 (1976). To succeed on an Eighth Amendment cruel and unusual punishment claim, a prisoner must prove: (1) that objectively the deprivation of a basic human need was "sufficiently serious," and (2) that subjectively the prison official acted with a "sufficiently culpable state of mind." Wilson v. Seiter, 501 U.S. 294, 298 (1991).

A serious medical condition is one that has been diagnosed by a physician as mandating treatment or that is so obvious that even a lay person would recognize the need for a doctor's attention. Gaudreault v. Municipality of Salem, Mass., 923 F.2d 203, 208 (1st Cir. 1990), cert. denied, 500 U.S. 956 (1991). A medical condition is also serious if a delay in treatment causes a life-long handicap or permanent loss. Monmouth County Corr. Inst. Inmates v. Lanzaro, 834 F.2d 326, 347 (3rd Cir. 1987), cert. denied, 486 U.S. 1006 (1988).

The subjective component of a cruel and unusual punishment claim is satisfied by showing that the prison official acted with deliberate indifference. Wilson, 501 U.S. at 303. A finding of deliberate indifference requires more than a showing of negligence. Farmer v. Brennan, 511 U.S. 825, 835 (1994). A prison official "must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Id. at 837. A prison official is not liable if he "knew the underlying facts but believed (albeit unsoundly) that the risk to which the fact gave rise was insubstantial of nonexistent." Id. at 844.

"To establish that a health care provider's actions constitute deliberate indifference to a serious medical need, the treatment, [or lack thereof], must be so grossly incompetent, inadequate,

or excessive as to shock the conscience or to be intolerable to fundamental fairness." Miltier v. Beorn, 896 F.2d 848, 851 (4th Cir. 1990). A mere disagreement between the inmate and the prison's medical staff as to the inmate's diagnosis or course of treatment does not support a claim of cruel and unusual punishment unless exceptional circumstances exist. Wright v. Collins, 766 F.2d 841, 849 (4th Cir. 1985). A constitutional violation is established when "government officials show deliberate indifference to those medical needs which have been diagnosed as mandating treatment, conditions which obviously require medical attention, conditions which significantly affect an individual's daily life activities, or conditions which cause pain, discomfort or a threat to good health." See Morales Feliciano v. Calderon Serra, 300 F.Supp.2d 321, 341 (D.P.R. 2004) (citing Brock v. Wright, 315 F.3d 158, 162 (2d Cir. 2003)).

Upon due consideration of the claims raised in the complaint, and the plaintiff's status as a *pro se* party, the undersigned finds that Dr. Proctor should be made to answer the complaint.

## C. The Plaintiff's Motion to Amend Complaint for Additional Parties

Liability under § 1983 is "personal, based upon each defendant's own constitutional violations." Trulock v. Freeh, 275 F.3d 391, 402 (4th Cir.2001)(internal citation omitted). Therefore, in order to establish liability under § 1983, the plaintiff must specify the acts taken by each defendant which violate his constitutional rights. See Wright v. Smith, 21 F.3d 496, 501 (2d Cir. 1994); Colburn v. Upper Darby Township, 838 F.2d 663, 666 (3rd Cir. 1988). Some sort of personal involvement on the part of the defendant and a causal connection to the harm alleged must be shown. See Zatler v. Wainwright, 802 F.2d 397, 401 (11th Cir. 1986). *Respondeat superior* cannot form the basis of a claim for a violation of a constitutional right in a Bivens case. Rizzo v. Good, 423 U.S. 362 (1976).

In this case, the plaintiff asserts only that Warden Waid denied his administrative grievances. Nevertheless, that is not the type of personal involvement required to state a constitutional claim under § 1983. See Paige v. Kupec, 2003 WL 23274357 *1 (D.Md. March 31, 2003). At best, the plaintiff asserts that Ms. Waid acted in her official capacity as the Warden of the Huttonsville Correctional Center. However, official capacity claims "generally represent only another way of pleading an action against an entity of which an officer is an agent." Kentucky v. Graham, 473 U.S. 159, 165 (1985) (citation and quotations omitted). Therefore, suits against state officials in their official capacities should be treated as suits against the state. Id. at 166. In order for the governmental entity to be a proper party of interest, the entity's policy or custom must have played a part in the violation. Id. (citing Monell v. New York City Dept. of Social Services, 436 U.S. 658, 694 (1978)). In this case, the plaintiff fails to assert that a policy or custom of the entity played a part in the alleged violation of his constitutional rights.

It is possible, however, that the plaintiff also attempts to name Warden Waid in her supervisory capacity. All the same, as previously noted, there is no *respondeat superior* liability under § 1983. See Monell v. Department of Social Services, 436 U.S. 658 (1978); Vinnedge v. Gibbs, 550 F. 2d 926, 928 (4th Cir. 1997). Instead, "liability will lie where it is affirmatively shown that the official charged acted personally in the deprivation of the plaintiff's rights." Vinnedge, supra.

Nonetheless, when a supervisor is not personally involved in the alleged wrongdoing, he may be liable under §1983 if a subordinate acts pursuant to an official policy or custom for which he is responsible. Fisher v. Washington Metropolitan Area Transit Authority, 690 F. 2d 1113 (4th Cir. 1982). Similarly, a supervisor may be liable under § 1983 if the following elements are established:

"(1) the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed a 'pervasive and unreasonable risk' of constitutional injury to citizens like the plaintiff; (2) the supervisor's response to that knowledge was so inadequate as to show 'deliberate indifference to or tacit authorization of the alleged offensive practices,' and (3) there was an 'affirmative causal link' between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff." Shaw v. Stroud, 13 F.3d 791, 799 (4th Cir.), cert. denied, 513 U.S. 813 (1994).[2]

In this instance, the plaintiff fails to make any allegations which reveal the presence of the required elements for supervisory liability, and the plaintiff therefore, fails to state a claim against Warden Waid.

For all of these reasons, the plaintiff cannot maintain a claim against Warden Waid and he should not be permitted to amend his complaint to add Warden Waid as a defendant in this action.

## IV.   Recommendation

For the reasons set forth herein, the undersigned recommends:

(1) the plaintiff's claims against Correctional Medical Services and Wexford Health Sources be **DISMISSED with prejudice** pursuant to 28 U.S.C. §§ 1915A and 1915(e) for the failure to state a claim for which relief may be granted;

(2) the plaintiff's claims against Dr. Proctor **PROCEED**, and that Dr. Proctor be **SERVED**

---

[2] "Establishing a 'pervasive' and 'unreasonable' risk of harm requires evidence that the conduct is widespread, or at least has been used on several different occasions and that the conduct engaged in by the subordinate poses an unreasonable risk of harm or constitutional injury." Shaw, 13 F.3d at 799. "A plaintiff may establish deliberate indifference by demonstrating a supervisor's 'continued inaction in the face of documented widespread abuses.'" Id.

with a copy of the summons and complaint through the United States Marshal Service; and

(3) the plaintiff's Motion to Amend Complaint for Additional Parties (dckt. 14) be **DENIED**.

Within ten (10) days after being served with a copy of this Opinion/Recommendation, any party may file with the Clerk of Court written objections identifying those portions of the recommendation to which objection is made and the basis for such objections. A copy of any objections shall also be submitted to the Honorable Frederick P. Stamp, Jr., United States District Judge. Failure to timely file objections to this recommendation will result in waiver of the right to appeal from a judgment of this Court based upon such recommendation. 28 U.S.C. § 636(b)(1); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984), cert. denied, 467 U.S. 1208 (1984).

The Clerk is directed to send a copy of this Opinion/Report and Recommendation to the *pro se* petitioner by certified mail, return receipt requested, to his last known address as shown on the docket.

DATED: February 25, 2009.

*John S. Kaull*
JOHN S. KAULL
UNITED STATES MAGISTRATE JUDGE