# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

**LESLIE M. LEWIS,**

   **Plaintiff,**

v.             Civil Action No. 5:08cv167
                 (Judge Stamp)

**DR. DAVID PROCTOR,**

   **Defendant.**

## OPINION/REPORT AND RECOMMENDATION

The *pro se* plaintiff initiated this civil rights action on November 13, 2008. This case is before the undersigned for a Report and Recommendation on the defendant's two motions to dismiss.

### I. Contentions of the Parties

**A. The Complaint**

In the complaint, the plaintiff asserts that on November 18, 2007, he was escorted to the medical unit at Huttonsville Correctional Center because he was passing blood. When he arrived, although the plaintiff advised the nurse that he was passing blood, he was not seen for two to three hours. After he was examined by the nurse, the plaintiff was told to return to his housing unit because there was no indication that anything was wrong with him. When the plaintiff attempted to stand up, he passed out and "blood started to gush out of [his] rectum." The plaintiff was told by the nurse that the doctor was not in, but that she would call him to get an order to send the plaintiff to the hospital. The nurse left, presumably to call the doctor, and later returned and told the plaintiff the doctor ordered the plaintiff be put in observation. However, the plaintiff's bleeding was so

severe that an officer and chronic care nurse called the medical administrator who directed the plaintiff be sent to the hospital.

At the hospital, the plaintiff was seen by the Emergency Department for black stool and abdominal cramping. Complaint (dckt. 1) at Ex. A (plaintiff's medical records). The plaintiff was diagnosed with a duodenal ulcer and upper gastrointestinal ("GI") bleed. *Id*. The plaintiff was treated and released the next day. *Id*. In his discharge papers, the plaintiff was advised to follow up in one to two weeks with a doctor. *Id*. Moreover, he was advised to return to the hospital if he experienced dark or bloody stools, vomiting and/or increasing pain. *Id*. Finally, the plaintiff was advised to continue his prescribed medications and to schedule a repeat esophagastroduodenoscopy ("EGD scope") in three months. *Id*.

In March of 2008, the plaintiff went to medical complaining of stomach cramps. Although the plaintiff requested medication, he was given none. The doctor did order a stool sample; however, because of constipation, the plaintiff was unable to give one. Thus, he was told by a nurse that he had to sign a refusal form or he would be charged for the test. The plaintiff signed the refusal form.

Approximately one week later, the plaintiff returned to medical, ready and able to give a stool sample. Nonetheless, he was sent back to his dorm because the nurse refused. The nurse advised the plaintiff that there were no current orders for a stool sample and that the plaintiff would need to obtain a new order from the doctor for a test to be performed.

Other the next couple of months, the plaintiff returned to the medical unit on several occasions complaining of upper GI problems and abdominal cramps. The plaintiff asserts that there was no response from the doctor.

On May 12, 2008, the plaintiff complained to his correctional counselor of the lack of

medical treatment he had received. The counselor advised him to file a grievance. The plaintiff did so, but his grievance was denied.

On June 7, 2008, the plaintiff returned to medical complaining of upper GI problems and severe abdominal cramps. However, the plaintiff asserts that he was merely sent back to his dorm by a nurse and told he would be called back to medical later. The plaintiff was not called back.

On June 12, 2008, the plaintiff went to medical complaining of black stool and increasingly bad cramps. The plaintiff still received no response from the doctor.

On June 13, 2008, the plaintiff returned to medical complaining of blood in his stool, shortness of breath and stomach cramps. The nurse requested the plaintiff give a stool sample, which he did. The nurse told the plaintiff to return to his housing unit and that he would be called back to medical if there was an indication of blood in his stool. The plaintiff went back to his dorm.

Approximately one hour later, the plaintiff passed out in his cell and was escorted back to medical in a wheelchair. Upon arrival, the plaintiff asserts that he was screened by a nurse, who then went to talk to the doctor. When the nurse returned, she told the plaintiff the doctor had directed that he be returned to his dorm. The plaintiff was escorted back to his room by the medical janitor.

As soon as he returned to his room, the plaintiff went to his correctional counselor and complained that he was being refused medical care. The plaintiff advised his counselor that he was bleeding and that he had cramps and shortness of breath. The counselor advised the plaintiff to return to his dorm and lay down. Fifteen minutes later, the plaintiff started vomiting and passing blood from his rectum. The medical administrator witnessed the plaintiff's distress and ordered that he be sent to the hospital.

In the complaint, the plaintiff asserts that the defendant was deliberately indifferent to his

serious medical needs when he failed to recognize the serious nature of the plaintiff's complaints. In addition, the plaintiff asserts that the defendant was deliberately indifferent to his serious medical needs when he failed to provide timely and appropriate medical care. Finally, the plaintiff contends that the defendant was deliberately indifferent to his serious medical needs when he failed to follow the course of treatment prescribed by the doctors at the hospital upon the plaintiff's release from the hospital. The plaintiff seeks no specific relief for the alleged violations.

**B.   The Defendant's First Motion to Dismiss**

In his first motion to dismiss, the defendant requests the dismissal of the complaint for the following reasons:

(1) the plaintiff fails to request any relief;[1] and

(2) the plaintiff fails to allege sufficient facts to support a claim of deliberate indifference.

**C.   The Defendant's Second Motion to Dismiss**

In his second motion to dismiss, the defendant asserts that the plaintiff fails to state an Eighth Amendment claim of deliberate indifference, more specifically, for all of the events occurring prior to May 1, 2008.

**D.   The Plaintiff's Objection to the Defendant's Motions**

In his objections to the defendant's motions, the plaintiff asserts that he has stated a sufficient Eighth Amendment claim. In support of that contention, the plaintiff asserts that the defendant failed to follow the proper procedure for treating his condition. In addition, the plaintiff points out that he is now seeing a psychiatrist and psychologist for the trauma he suffered as a result of the occurrences

---

[1] In his response to the defendant's motions, the plaintiff asserts that he seeks compensatory, punitive and declaratory damages for his physical pain, suffering, mental anguish and emotional distress.

mentioned in the complaint. Moreover, he believes that his medical records were tampered with and that had he been properly monitored, he would not have had a recurrence of his upper GI problems. The plaintiff specifically identifies his claims as one of delayed emergency treatment and one of refusing to respond to medical care. The plaintiff asserts that the defendant was deliberately indifferent to his serious medical needs because he provided an "easier and less efficacious treatment than appropriate" and "failed to follow the express post operative directions of the surgeon who had operated on [him]." Dckt. 44 at 5.

## II. Standard of Review

In ruling on a motion to dismiss under Fed. R. Civ. P. 12(b)(6), the Court must accept as true all well-pleaded material factual allegations. Advanced Health-Care Services, Inc. v. Radford Community Hosp., 910 F.2d 139, 143 (4th Cir. 1990). Moreover, the Federal Rules of Civil Procedure "require[ ] only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)). However, although a complaint need not assert "detailed factual allegations," it must contain "more than labels and conclusions" or "a formulaic recitation of the elements of a cause of action." Twombly, 550 U.S. at 555 (citations omitted). To survive dismissal for failure to state a claim, the complaint must raise a right to relief that is more than speculative. *Id.* In other words, the complaint must contain allegations that are "plausible" on their face, rather than merely "conceivable." *Id.* at 555, 570. A "claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949 (2009).

5

### III. Analysis

To state a claim under the Eighth Amendment for ineffective medical assistance, the plaintiff must show that the defendant acted with deliberate indifference to his serious medical needs. Estelle v. Gamble, 429 U.S. 97, 104 (1976). To succeed on an Eighth Amendment cruel and unusual punishment claim, a prisoner must prove: (1) that objectively the deprivation of a basic human need was "sufficiently serious," and (2) that subjectively the prison official acted with a "sufficiently culpable state of mind." Wilson v. Seiter, 501 U.S. 294, 298 (1991).

A serious medical condition is one that has been diagnosed by a physician as mandating treatment or that is so obvious that even a lay person would recognize the need for a doctor's attention. Gaudreault v. Municipality of Salem, Mass., 923 F.2d 203, 208 (1st Cir. 1990), cert. denied, 500 U.S. 956 (1991). A medical condition is also serious if a delay in treatment causes a life-long handicap or permanent loss. Monmouth County Corr. Inst. Inmates v. Lanzaro, 834 F.2d 326, 347 (3rd Cir. 1987), cert. denied, 486 U.S. 1006 (1988).

The subjective component of a cruel and unusual punishment claim is satisfied by showing that the prison official acted with deliberate indifference. Wilson, 501 U.S. at 303. A finding of deliberate indifference requires more than a showing of negligence. Farmer v. Brennan, 511 U.S. 825, 835 (1994). A prison official "must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837. A prison official is not liable if he "knew the underlying facts but believed (albeit unsoundly) that the risk to which the fact gave rise was insubstantial of nonexistent." *Id.* at 844.

"To establish that a health care provider's actions constitute deliberate indifference to a serious medical need, the treatment, [or lack thereof], must be so grossly incompetent, inadequate,

or excessive as to shock the conscience or to be intolerable to fundamental fairness." Miltier v. Beorn, 896 F.2d 848, 851 (4th Cir. 1990). A mere disagreement between the inmate and the prison's medical staff as to the inmate's diagnosis or course of treatment does not support a claim of cruel and unusual punishment unless exceptional circumstances exist. Wright v. Collins, 766 F.2d 841, 849 (4th Cir. 1985). A constitutional violation is established when "government officials show deliberate indifference to those medical needs which have been diagnosed as mandating treatment, conditions which obviously require medical attention, conditions which significantly affect an individual's daily life activities, or conditions which cause pain, discomfort or a threat to good health." See Morales Feliciano v. Calderon Serra, 300 F.Supp.2d 321, 341 (D.P.R. 2004) (citing Brock v. Wright, 315 F.3d 158, 162 (2d Cir. 2003)).

Here, the plaintiff fails to allege facts sufficient to show that the defendant was deliberately indifferent to his serious medical needs.

1. November 18, 2007 Incident

With regard to his hospitalization on November 18, 2007, the plaintiff alleges that he was escorted to the medical unit by a corrections officer after he started passing blood. He told a nurse that he was passing blood, but had to wait two or three hours to be screened. The nurse directed the plaintiff to return to his housing unit. However, before he could leave the medical unit, the plaintiff passed out and started gushing blood out of his rectum. The nurse immediately contacted the doctor who then directed that the plaintiff be placed in observation. The plaintiff was taken to the hospital sometime later that same day.

Assuming that Dr. Proctor was the doctor who recommended the plaintiff's placement in observation, the plaintiff has failed to show that Dr. Proctor was deliberately indifferent to his

serious medical needs on November 18, 2007. At best, Dr. Proctor recommended that the plaintiff be placed in observation, rather than sent directly to the hospital. However, even if this course of action was not appropriate, the plaintiff's need was recognized by the medical administrator and he was transferred to the hospital. The plaintiff does not complain of the treatment provided by the hospital nor does he allege any injury, other than psychological, from the time spent in the medical unit or in observation. Thus, because the plaintiff has failed to show a physical injury resulting from the care he received from Dr. Proctor on November 18, 2007, he has failed to state a claim of deliberate indifference against Dr. Proctor for the incident that occurred on that date. See 42 U.S.C. §1997e(e) ("[n]o Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury").

2. Treatment for Time of March of 2008 through June 12, 2008

With regard to the time period between March of 2008 and June 12, 2008, the plaintiff concedes that he did receive some treatment. Complaint (dckt. 1) at 7. What he appears to assert as a basis for his deliberate indifference claim is that Dr. Proctor failed to follow the appropriate course of treatment during this time period, because the doctor did not follow the exact instructions of the plaintiff's releasing physician at the outside hospital.[2] *Id.* Specifically, the plaintiff asserts that Dr. Proctor chose an easier and less efficacious treatment plan than that prescribed by his

---

[2]Specifically, the plaintiff states in his complaint, "I do believe the prison Doctor did in fact go an easier way than was mandated from the surgeon . . . I do believe it was less effective not to go with the surgeons order." From the pleadings, it appears that rather than follow the discharge recommendations of plaintiff's surgeon, Dr. Proctor ordered plaintiff's condition be monitored clinically by CBC and hemocult testing and that if these tests showed any medical reason for it, the plaintiff would again be referred to the hospital. See Defendant's Memorandum (dckt. 41) at 5; see also Complaint at Ex. A (response to grievance).

surgeon. Dckt. 44 at 5. The plaintiff asserts, without any supporting evidence, that Dr. Proctor's treatment plan was inadequate and that the surgeon's treatment plan was the better course of action. *Id.* Thus, this claim boils down to a disagreement between the plaintiff and Dr. Proctor over the plaintiff's course of treatment upon his release from the hospital. This, however, is not sufficient grounds to establish an Eighth Amendment violation. See Wright v. Collins, 766 F.2d at 849 (a cognizable claim under the Eighth Amendment is not raised when the allegations reflect a mere disagreement between the inmate and a physician over the inmate's proper medical care, unless exceptional circumstances are alleged); see also Goff v. Bechtold, 632 F. Supp. 697, 698 (S.D.W.Va. 1986) (the denial of an inmate's preferred course of treatment does not violate a constitutional right).

Alternatively, the plaintiff appears to argue that Dr. Proctor was medically negligent for not following the course of action prescribed by the hospital surgeon. Nonetheless, mere malpractice or negligence in diagnosis or treatment does not state a constitutional claim. Estelle, 429 U.S. at 106 (1976).

The plaintiff also appears to argue that the delay in treatment from March of 2008 until his hospitalization on June 13, 2008, caused his symptoms to recur. However, this is a conclusory and self-serving statement for which the plaintiff provides no evidentiary support. Wood v. Housewright, 900 F.2d 1332, 1335 (9th Cir. 1990) (a delay in treatment in and of itself does not rise to the level of a constitutional violation, unless the delay caused substantial harm). The plaintiff has failed to establish that the course of treatment provided by Dr. Proctor was inadequate to address his medical needs or that it caused the recurrence of his upper GI problems.

Accordingly, the plaintiff has failed to establish that Dr. Proctor was deliberately indifferent

to his serious medical needs during the time period between March of 2008 and June 13, 2008.

   3.   June 13, 2008 Incident

On this date, the plaintiff reported to the medical unit complaining of blood in his stool, shortness of breath and stomach cramps. The nurse requested that the plaintiff give a stool sample, which he did. The plaintiff was then sent back to his housing unit because the doctor was not in yet. One hour later, the plaintiff passed out and was taken by wheelchair to the medical unit. The plaintiff was screened by a nurse, who then talked to "the doctor." The plaintiff was escorted back to his cell and then went to see his counselor. The counselor told the plaintiff to go lay down in his cell. The plaintiff went back to his cell and 15 minutes later he starting vomiting and passing blood. The plaintiff was sent to the hospital.

On this date, the doctor was not yet in when the plaintiff first arrived at medical. Thus, he cannot be liable for anything that happened during the plaintiff's first trip to medical on June 13, 2008. The second time the plaintiff arrived at medical that day, the doctor was in, but sent the plaintiff back to his housing unit. At that time, the nurse had already taken a stool sample from the plaintiff. It is not known whether those results had been prepared or if the doctor had yet had a chance to examine them.

A short while later, the plaintiff started vomiting and passing blood. He was taken to the hospital and treated. Thus, to the extent that there is any claim against Dr. Proctor, assuming he was the treating physician on this date, it could only be for sending the plaintiff back to his housing unit after the plaintiff's second trip to medical. Nevertheless, the plaintiff concedes that after leaving the medical unit he went to see his counselor and that he was in his cell for only about 15 minutes prior to his conditioning worsening. In addition, the plaintiff concedes that as soon as his condition

became serious, he was transferred to a hospital. Thus, although his treatment was delayed for a short time, he was eventually treated and alleges no injury, other than psychological, that occurred as a result of the short delay. Accordingly, the plaintiff has failed to establish that Dr. Proctor was deliberately indifferent to his serious medical needs on this date.

## IV. Recommendation

For the reasons set forth herein, the undersigned recommends that the defendant's Motions to Dismiss (dckt. 35 and 40) be **GRANTED** and that the plaintiff's complaint (dckt. 1) be **DISMISSED with prejudice** from the active docket of this Court.

Within ten (10) days after being served with a copy of this Opinion/Report and Recommendation, any party may file with the Clerk of Court written objections identifying those portions of the recommendation to which objection is made and the basis for such objections. A copy of any objections shall also be submitted to the Honorable Frederick P. Stamp, Jr., United States District Judge. Failure to timely file objections to this recommendation will result in waiver of the right to appeal from a judgment of this Court based upon such recommendation. 28 U.S.C. § 636(b)(1); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984), cert. denied, 467 U.S. 1208 (1984).

The Clerk is directed to send a copy of this Opinion/Report and Recommendation to the *pro se* plaintiff by certified mail, return receipt requested, to his last known address as shown on the docket, and to counsel of record via electronic means.

DATED: October 19, 2009.

*John S. Kaull*
JOHN S. KAULL
UNITED STATES MAGISTRATE JUDGE